JOHN B. ANDERSON, Appellant, v. WESTCHESTER FIRE INSURANCE COMPANY, a Corporation, Respondent.

CHARLES P. STROM, Appellant, v. WESTCHESTER FIRE INSURANCE COMPANY, a Corporation, Respondent.

(178 N. W. 434.)

**Insurance — hail insurance held not to take effect within twenty-four hours under statute where agent had no notice of amount or crops or land to be covered.**

1. Where applications for hail insurance are signed by the applicants upon a farm, and then sent by mail to the local agent, without the notice or knowledge of the local agent as to the amount of the insurance, the specific crops or lands to be covered, § 4902, Comp. Laws 1913, which provides that hail insurance shall take effect from and after twenty-four hours from the day and hour the application for such insurance has been taken by the authorized local agent of the insurance company, does not apply.

**Insurance — minds of parties who contracted for hail insurance held not to have met so as to create liability for losses.**

2. Where the local agent of a hail insurance company furnishes application blanks to one who has been assisting him in writing insurance, and instructs such party that he may sign the application blank on his farm and send it to him by mail, and that such may be one under the instructions of the hail insurance company, which provides for insurance becoming effective twenty-four hours from the day and hour of the actual signing of the application; and

Where, pursuant thereto, such party signs an application blank and causes another, his brother-in-law, so to do, upon his farm, on July 19, 1918, at 8 P. M., and thereupon deposits the same in a rural mail box on July 20, 1918,

without the notice or knowledge of the local agent as to the amount of the insurance, specific crops or lands to be insured or the specific company to which such application is made; and

Where such application blanks so signed, in the course of the mail, are not received by the agent until July 22, 1918, during which time hail losses have been sustained upon the crops covered in the application, concerning which losses the local agent is advised, before he actually signs such application,—

It is *held,* that under the instructions of the defendant, the provisions in the application blanks, and the directions given by the local agent, the minds of the parties never met upon the terms or conditions of any contract of insurance existing at the time when the hail losses were sustained.

Opinion filed June 3, 1920.

Two actions in District Court, Burleigh County, *Nuessle, J.,* to recover upon hail insurance contracts, tried and considered together.

From a judgment of dismissal the plaintiffs separately appeal.

Affirmed.

*F. E. McCurdy,* for appellant.

As to the question whether or not the company has signed it or given consent, see Nowark Machine Co. v. Kenton Ins. Co. (Ohio) 22 L.R.A. 768.

As to the question of acceptance by mail, see Northwest Mut. L. Ins. Co. v. Joseph, 31 Ky. L. Rep. 714, 12 L.R.A.(N.S.) 439, 103 S. W. 317.

The authority of an agent to do certain acts on behalf of his principal may be inferred from his doing them for such a time that the principal would naturally have known of it, and have forbidden them if unauthorized. Dierkes v. Haux Hurst Land Co. (N. J.) 79 Atl. 361, 34 L.R.A.(N.S.) 693, note.

While an offer must be definite, and there must be a meeting of the minds, yet that offer may be made in any manner which would communicate, even though it be but a mere advertisement in a newspaper, and it need not be definite as to quantity. 6 R. C. L. 23, p. 600.

The method of communication may be any method agreed upon between the parties or by any usual method of communication. Howard v. Daly, 19 Am. Rep. 285; 6 R. C. L. 606.

*Lawrence & Murphy,* for respondent.

"To constitute a binding contract of insurance there must be a meet-

ing of the minds of the parties with authority to contract as to the premises and risk, the matter insured, the term of insurance, and the amount of the premium." Shawnee Mut. F. Ins. Co. v. McClure, 135 Pac. 1150; People's Ins. Co. v. Badden, 8 Ill. App. 447.

An application for insurance is a mere proposal, which the company can accept, reject, or modify, and until the minds of the parties meet by agreement upon all the terms and until all the conditions required are performed, no contract arises. McCully v. Phœnix L. Ins. Co. 18 W. Va. 782; Lowe v. St. Paul F. & M. Ins. Co. 114 N. W. 586; Shawnee Mut. F. Ins. Co. v. McClure, 135 Pac. 1150.

A contract is an agreement to do or not to do a certain thing. It is essential to the existence of a contract that there should be parties capable of contracting, and that they did actually contract. In this case the proof shows only a mere application for an insurance contract. The judgment of the district court is affirmed. Wacker v. Globe F. Ins. Co. 37 N. D. 13, 163 N. W. 263.

BRONSON, J. *Statement.*—These are two actions to recover losses to crops through hail, upon special insurance contracts. The cases were tried before the trial court without a jury; the evidence in both cases was submitted to the court together, and the cases have been argued and briefed as companion cases upon appeal. The trial court rendered judgment dismissing the actions with prejudice. The plaintiffs have severally appealed from the judgment of dismissal. The facts and principals of law applicable being similar, the two cases, as the parties agree, may be considered together.

The facts substantially are as follows:—

The plaintiffs are farmers residing in Burleigh county. The defendant is engaged in the hail insurance business, with the general agents at Minneapolis. In July, 1918, Mr. Vold was the local agent of the defendant, at Regan, North Dakota, and the cashier of the Farmers State Bank of Regan.

On the evening of July 19, 1918, at the home of the plaintiff Anderson, the plaintiffs each made and signed an application for hail insurance upon the crops of grain growing upon their respective half sections of land. In an envelop furnished by the agent Vold, Anderson inclosed these two applications, together with individual notes of the

plaintiffs, payable to the Farmers State Bank, for the premiums, without any letter. He addressed the envelop to the agent Vold at Regan, North Dakota. The next morning, July 20th, he deposited this envelop in the rural mail box near his home. Through the rural mail carrier service this mail arrived at Baldwin, a town near Regan, during the afternoon or evening of July 20th. The envelop bears the postmark Baldwin, July 22d. This envelop was received by the agent Vold at Regan, North Dakota, on the morning of July 22d, through the train service from Baldwin to Regan. On July 21st, between 4 and 5 P. M., the crops covered by these applications were destroyed or damaged by hail. On the morning of July 22d at or about the time the train arrived carrying this mail from Baldwin, the plaintiffs drove to and arrived at Regan to see the agent about these hail losses.

The plaintiffs notified the agent Vold concerning their hail losses, shortly before the agent had received this mail from the post-office. During the day of July 22d, and after he was notified of the hail losses, he signed the applications as agent, stating thereon that such applications were taken on the 19th day of July, 1918, at 8 P. M. On this day, these applications, together with a certificate of deposit of the Farmers State Bank, in payment of the premium, were mailed to the general agents of the defendant in Minneapolis. Likewise, in a separate envelop there were mailed, by each of the plaintiffs, notices of the hail losses sustained.

On July 25, 1918, the general agents, in response, wrote their agent to the effect that the applications did not reach them within a reasonable time after July 19, 1918, that their instructions were not observed; that they were unable to protect themselves by reinsuring; that they rejected the applications and returned the certificates of deposit. In reply to this letter, on July 27th, the agent wrote a letter, wherein he explained the manner in which such applications were signed and mailed to him, and their subsequent mailing by the agent on July 22d. He further advised the general agents that if the policies were not sent and adjustment made within a reasonable time he would turn the matter over to their attorney for adjustment according to law.

This action, subsequently, in September, 1918, was instituted. Trial was had in December, 1918, and the judgments rendered on September

18, 1919. The records upon these appeals were filed in this court upon April 23, 1920.

The plaintiff Anderson testified that Vold was the agent for several insurance companies. That he had been associated with him somewhat, assisting in procuring customers for insurance. He had taken out previously some hail insurance in June, 1918, covering the same property for the same amount with the Middlewest Fire Underwriters Agency, through Vold as agent. Previous to July 19th, the plaintiff Anderson had seen Vold, and had a talk with him about some more hail insurance in this defendant company. Vold suggested that he ought to take a little more insuranc. He gave him some application blanks to take with him, including some application blanks in other companies. Anderson made arrangements with the bank to take care of the premium if he should take out additional hail insurance. He had these applications to use if anyone should call for them. He testified that this application was made on his own voluntary motion. That no agent of the company was there when he signed it; that before that time he had not made up his mind as to whether he would take out insurance with the defendant company. That he figured up his application alone.

The agent Vold testified that he had a talk with the plaintiff at the time when he took out a policy in the Middlewest Fire Insurance Company. (The date of the application in such Middlewest application is June 7, 1918.) That he told Anderson, "that that vicinity nearly always had hail, and that he better take double insurance. That is what all his neighbors were doing." That Anderson told him that he would wait a while, and the agent, "I will send a few applications out with you." He testified that he gave Anderson several blank applications. That Anderson asked him if it would be all right to sign up the applications and send them in. That he, the agent, looked up the instructions of the defendant, read them to the plaintiff Anderson, and told him that it was all right. That he advised Anderson that he could have the application filled out and sign it up, and if he came to town to bring it along, and, if not, to send it through the mail, and he gave him a big envelop for such purpose. The agent did not have any talk with the plaintiff Strom about hail insurance.

In the evidence was introduced plaintiff's exhibit H, which contains instructions stating that it is very important that agents mail the appli-

cations, both the original and duplicate, to the offices of the general agents the same day that they are signed, as the liability of the company becomes effective twenty-four hours from the hour and date of the actual signing of the hail applications. Another notice also is contained therein, that applications must be made in duplicate, and that the agents must sign the application in writing. The agent Vold further testified that when he gave the blank applications to the plaintiff Anderson, it was then undetermined as to whether the plaintiff would take out any more insurance. That the first knowledge he had concerning the application was when he opened the mail on July 22d, and that this was the first communication of any kind that an application for insurance had been signed by either of the plaintiffs. It further appears in the evidence that the plaintiff Anderson had telephonic communication with Regan, and that he did not call up or otherwise inform the agent Vold about these applications having been signed at any time until he came to Regan, after the hail losses had occurred. The trial court, in its findings, determined that no contract was ever made between the parties, and that the loss occurred prior to the signing of the applications.

*Contentions.*—It is the plaintiff's contention that the insurance claimed is not for a loss occurring under any policy of insurance, but under a clause in the application stating that the company assumes a liability for a loss and damage by hail only to the crops involved, beginning twenty-four hours from the hour and day of the actual signing of the applications by the plaintiff, and continuing for seventy-two hours thereafter; in other words, that, for advertising purposes, this defendant agreed to give the parties insurance for a period of forty-eight hours; that defendant advertised that that is insured which is not covered by any policy, and in case the application is rejected that insurance is given free. In support of this contention it is urged that the defendant's local agent, Vold, whether within or contrary to his instructions, made an offer directly to Anderson, and more or less indirectly through Anderson to Strom, to permit that such liability be assumed by the plaintiffs signing such applications and mailing the same to the agent; that such agent at least had ostensible, if not actual, authority so to do; that the plaintiffs accepted such offer and complied with its terms.

The defendant contends that, irrespective of whether the agent had actual or ostensible authority, the facts disclose no offer upon which an acceptance could be based to constitute a special contract of insurance, and that, under the statute, no contract of insurance existed.

*Opinion.*—The facts have been stated somewhat at length. They are practically not in dispute. They are substantially embodied in the findings of fact made by the trial court. Upon these findings (separately made in each case), it concluded, in substance, that the minds of the parties never met upon the terms and conditions of any contract of insurance, and that no contract for insurance was in force at the time when the losses were sustained. We are satisfied that these conclusions of the trial court are correct, and that the defendant is not liable to either of the plaintiffs.

Section 4902, Comp. Laws 1913, provides that every insurance company engaged in the business of insuring against loss by hail in this state shall be bound, and the insurance shall take effect from and after twenty-four hours from the day and hour the application for such insurance has been taken by the authorized local agent of said company. Upon the facts in this record, it is clear that, under this statute, no insurance contract was effective, either with Anderson or Strom, twenty-four hours after each application was signed by them upon the farm. Then, the agent Vold had not taken the applications. He then had neither notice nor knowledge of the amount of the insurance, the specific crops or lands to be covered, in the respective applications.

But the plaintiffs contend, as stated, that the agent, possessing general authority, represented and offered to Anderson, and advertised, that in accordance with the instructions of the defendant, insurance would become effective twenty-four hours after actual signing of the applications by the plaintiffs, and that the defendant cannot be heard to complain if the agent did deviate from his strict instructions by reason of the apparent ostensible authority of such agent. That, therefore, special contracts of insurance existed after the lapse of the twenty-four hour period from the actual signing of such applications, upon compliance by the plaintiffs with the terms of the representation and offer. This contention cannot be upheld.

Clearly in the instructions of the defendant, which were read to the plaintiff Anderson, and in the application blanks which were signed by

the plaintiffs, it is contemplated and provided that the applications must be taken and signed by the local agent before the twenty-four hour period begins.

The claimed representation and offer of the agent Vold fails to show any agreement or even definite offer for the writing of any specific insurance in the defendant company, upon the property of either Anderson or Strom. Under the most favorable interpretation, the agent Vold simply arranged for the plaintiff Anderson to send in applications for hail insurance by mail. He furnished to him application blanks and an envelop, and these apparently were furnished some six weeks before the applications were actually signed. True, he suggested to Anderson that he should take double insurance. But Anderson might make an application, under this arrangement, for such amount, upon such crops, and in what company he saw fit; for he had application blanks of other companies. He might take and make the application for another, likewise, as he did. The fact that he mistakenly believed, under the arrangement as suggested by the local agent, that he could make the contract effective, alone for himself and for others, at such time and for such amount of insurance as he saw fit, without the notice, knowledge, or action of the local agent, falls far short of completing the essential elements necessary for a contract. 1 Elliott, Contr. § 26, 27, 36. Neither the instructions of the defendant, the provisions of the application blank, nor the so-termed arrangement of the local agent, may be construed to mean that the applicant might initiate insurance, or that this might be made a means of securing hail insurance gratis, without the notice, knowledge, or consent of the agent. The judgments are each affirmed, with costs.

CHRISTIANSON, Ch. J., ROBINSON, BIRDZELL, JJ., concur.

GRACE, J. (concurring in part and dissenting in part): In my opinion Anderson had a contract of insurance. It is also my opinion Strom did not have a contract of inusrance. The judgmet of dismissal should be affirmed in the Strom case, and, in the Anderson case, the judgment of dismissal should be reversed and a new trial granted.